**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| **WILLIAM SHERLACH,** ) | |
| ) | **ADV. PROC. NO. 22 – 05005** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **APRIL 21, 2022** |
| ) | |
| **ALEX EMRIC JONES; INFOWARS, LLC;** ) | |
| **FREE SPEECH SYSTEMS, LLC; INFOWARS** ) | |
| **HEALTH, LLC; PRISON PLANET TV, LLC;** ) | |
| **WOLFGANG HALBIG; CORY T. SKLANKA;** ) | |
| **GENESIS COMMUNICATIONS NETWORK,** ) | |
| **INC.; and MIDAS RESOURCES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**<u>MOTION FOR REMAND</u>**

These three removed cases belong in the Connecticut Superior Court, where they have been pending for approximately four years; where over 800 filings have been docketed; where over 250 orders have been entered, all by the same presiding judge; and where a trial on damages is scheduled to begin in four short months. The legal claims, which sound in defamation, false light, negligent and intentional infliction of emotional distress and violation of the Connecticut Unfair Trade Practices Act, are purely state-law claims, as is the adjudication of damages based on those claims. The issues to be tried are quintessential jury questions, and the plaintiffs long since claimed them to the jury. The trial on damages, which is to begin August 2, is estimated to take four to six weeks. Denying remand would raise unnecessary jurisdictional issues, waste

judicial resources, and violate principles of comity. Remand is warranted based on permissive

abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b).[1]

Moreover, these removals are taken in a bad faith effort to undermine the authority of the

Connecticut Superior Court. The Jones defendants have repeatedly used removal as a delaying

tactic, and this time is no different. They have attempted removal to the United States District

Court for the District of Connecticut twice and been remanded twice. This Court should not

permit them to abuse the removal statutes any more than they already have. After *four years* of

"'obfuscation and delay on the part of the defendants,'"[2] this case is set to commence trial four

short months from now.[3] In connection with Mr. Jones' recent refusal to attend his deposition,

which resulted in the imposition of contempt sanctions, the trial court stated: "the existing trial

date … is a firm trial date and parties and counsel should plan accordingly."[4]  These removals

are the Jones defendants' response.

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY-CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY-CV18-6046438-S). For purposes of remand analysis, there is no significant difference among the three cases. (Thus, when these cases were removed from the Connecticut Superior Court to the Connecticut District Court in 2020, orders transferring the cases to Judge Hall's docket were entered in all three cases (on December 4, 2020 in *Lafferty v. Jones* (3:20-cv-01723-JCH), on December 2, 2020 in *Sherlach v. Jones* (3:20-cv-01724-JCH), and on December 14, 2020 in *Sherlach v. Jones* (3:20-cv-01725-JCH)). For this reason, and to make the Court's work more efficient, this identical Motion to Remand is being filed in all three removed bankruptcy cases: *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006).

[2] See *Lafferty v. Jones*, 336 Conn. 332, 374 (2020) (quoting the trial court in its first major sanctions ruling), *cert. denied*, 209 L. Ed. 2d 529 (Apr. 5, 2021).

[3] In those brief four months, the parties will conduct all expert discovery and file motions in limine. A motion for summary judgment is also anticipated from Genesis Communications Network, a non-Jones defendant.

[4] Tab 1, Super Ct. DN 788, 3/30/22 Hearing at 25:4-9. Because of the numerous different court dockets to be referenced, we use the following citation conventions. "BR DN" citations indicate citations to this Court's docket. Citations to the dockets of the two prior removals to the

The plaintiffs request that the Court grant remand on an emergency basis, so that the Jones defendants do not succeed in their goal of using this removal to disrupt the Connecticut state court trial schedule. The plaintiffs also request sanctions in connection with this abusive removal.

## I.      LEGAL STANDARD

"A court will remand a case, '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.' 28 U.S.C. § 1447(c). '[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court[.]' *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The party asserting jurisdiction 'must support its asserted jurisdictional facts with competent proof and justify its allegations by a preponderance of the evidence.' *S. Air, Inc. v. Chartis Aerospace Adjustment Servs., Inc.*, 3:11-cv-1495 (JBA), 2012 WL 162369, at *1 (D. Conn. 2012) .... 'In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against

Connecticut District Court are referred to by the District Court case number and docket entry. Citations to the Superior Court docket in the *Lafferty* case are indicated "Super. Ct. DN." (By order of the Connecticut Superior Court, all three state-court cases were consolidated on January 2, 2019. Since then, the same filings have been made and the same orders have been entered in all three cases.) Further, in order to distinguish between exhibits attached to prior filings and the exhibits attached to this filing, we use "Tab 1", etc., to refer to the attachments to this filing. Finally, under the protective order entered in the Connecticut Superior Court case, each party can claim part or all of a deposition as confidential. The portions of transcript attached hereto are not designated confidential by any party and any confidentiality notations on the transcript pages apply to other portions of the transcript that have not been attached hereto.

removability.' *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)." *Breakell v. 3M Co.*, 2019 WL 3162490, at *2 (D. Conn. July 16, 2019) (Bolden, J.)

"Even if there is subject matter jurisdiction, and a case has been timely removed, a court may remand 'such claim or cause of action on any equitable ground." *Id.* (quoting 28 U.S.C. § 1452(b)). Further, the Court may exercise its discretion to permissibly abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

## II.     RELEVANT PROCEDURAL HISTORY

### A.     The Plaintiffs' State Law Claims

The plaintiffs are immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012, and one first responder to that shooting. The families bring these three consolidated actions against Alex Emric Jones and his companies Infowars LLC, Infowars Health LLC, Free Speech Systems LLC and Prison Planet TV LLC ("the Jones defendants"). The Alex Jones Show and other Infowars programming stream on Infowars.com and banned.video and via about sixty radio stations, reaching an audience of over two million people, and, until recently, on Jones's YouTube channel, which had more than 2.3 million subscribers. BR DN 1, Notice of Removal, Ex. B, Complaint ¶¶ 30, 40.

For more than five years, Alex Jones targeted the families. Jones and his Infowars "contributors" told an audience of millions that the Sandy Hook shooting was "a synthetic completely fake with actors," a "hologram," an "illusion" and "the fakest thing since the three-dollar bill," "staged" to take away their guns, and that the Sandy Hook families were "paid … totally disingenuous" "crisis actors" who faked their loved ones' deaths. Jones urged the audience to "investigate," knowing his audience would respond by cyberstalking, harassing, and

threatening the families.[5] These are only a few excerpts from the families' 39-page, 394-paragraph initial complaint, which alleges a course of conduct sounding in false light, negligent and intentional infliction of emotion distress, violation of the Connecticut Unfair Trade Practices Act, and defamation.[6]

### B.    The Four-Year History of the Case in the Connecticut Superior Court

This matter has proceeded in Connecticut Superior Court for nearly four years, all before a single judge, who is now very familiar with the complex factual and legal issues of this case and its extensive procedural history. Through the course of the case, the Jones defendants have resisted the authority of the Connecticut Superior Court by every conceivable means. They have removed twice to the United States District Court and been remanded twice. No.: 3:18-CV-1156 (JCH), DN 58, 11/5/18 Ruling Re: Mot. for Remand; No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for Remand. Jones was sanctioned in June 2019 for resisting discovery and threatening plaintiff's counsel in a manner designed to unfairly influence the proceedings. That sanction was affirmed by the Connecticut Supreme Court in *Lafferty v. Jones*, 336 Conn. 332, 374 (2020).

In October 2021, knowing another sanction of default was likely imminent, the Jones defendants attempted to avoid it by moving to recuse the Connecticut Superior Court judge who

---

[5] The citations to the quotations, in the order they appear, are:  BR DN 1, Notice of Removal Ex. B,  Complaint ¶ 185 (Jones on his radio show);  ¶ 223 (Jones on his radio show); ¶¶ 140-41 (Halbig and Jones on Jones's radio show); ¶¶ 117, 273 (Jones on his channel and at a press conference), ¶¶ 138, 149, 223 (Jones on his radio show);  ¶ 295 (statement by an Infowars "contributor" on Jones's radio show); ¶¶ 112, 120-21, 185, 197 (Jones on his channel and on his radio show). Identical allegations appear in the complaints in the two consolidated actions.

[6] The Connecticut Superior Court has determined that the plaintiffs' allegations are sufficient in all respects under Connecticut law. In November 2021, the court denied the Jones defendants' motion to strike the families' complaint (the state court equivalent of the federal 12(b)(6) motion). *See* Super. Ct. DN  580.

had presided over the case since its inception. *See* Super. Ct. DN 519. That motion, of course, was denied. *See* Super. Ct. DN 519.20.

In November 2021, following the Jones defendants' repeated violations of discovery obligations and court orders, the court entered a disciplinary default against the Jones defendants. The court found that the Jones defendants' "failure to produce critical documents, their disregard for the discovery process and procedure and for Court orders is a pattern of obstructive conduct that interferes with the ability of the plaintiffs to conduct meaningful discovery and prevents the plaintiffs from properly prosecuting their claims." Tab 2, Super. Ct. DN 574, 11/15/21 Hrg. Tr. at 15:2-7. The court concluded that the Jones defendants' "callous disregard of their obligations to fully and fairly comply with discovery and Court orders" left the court with no other option than to enter a default. *Id.* at 14:15-17. As a result of the default, damages, including punitive damages, remain to be tried. Jury selection is scheduled for August 2, with trial to begin on September 1. Super. Ct. DN 798, Motion to Modify Scheduling Order at 2; DN 798.10, Court Order Granting Motion to Modify Scheduling Order; DN 788, 3/30/22 Hrg. Tr. at 25:4-9.

### C.    The Bankruptcy Filings

On April 18, 2022, three of the Jones defendants – Infowars, LLC; Infowars Health, LLC; and Prison Planet TV, LLC (hereafter, "the shell company debtors") – filed petitions for chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *See e.g.* Tab 3, Chapter 11 Petition Case No. 22-60020, Bankruptcy Petition of InfoW, LLC (aka Infowars, LLC). Throughout discovery the Jones defendants have represented that the three entities who now seek bankruptcy protection are essentially shell companies with no employees,

no business purpose, little-to-no assets, all completely controlled by Alex Jones.[7] The Jones

defendants are using the bankruptcy filings of these entities to delay the state court case's

progress to trial while at the same time shielding Jones's real finances from disclosure in the

Texas Bankruptcy Court.

The Jones defendants who have assets – Free Speech Systems, LLC and Alex Jones – did

*not* file bankruptcy – because to do so would expose their manipulated financial records and

fraudulent asset transfers to the scrutiny of a bankruptcy court, their creditors, and potentially a

trustee. The findings made by the Connecticut Superior Court already establish the Jones

defendants' deliberate manipulation of their financial information. For example, the Connecticut

Superior Court found that in response to its order that trial balances reflecting the financial

condition of the Jones companies being produced, the Jones defendants provided "sanitized,

inaccurate records" created by their accountant Robert Roe. Tab 2, Super Ct. DN 574, 11/15/21

Hrg. Tr. at 9:19. Roe presented an affidavit in which he attempted to justify the Jones

---

[7] In this action, the corporate designee for Infowars, LLC testified that it "has no business purpose" and is solely owned by Alex Jones. Tab 4, 6/23/21 Dep. Tr. at 18:13, 19:23. The corporate designee for Free Speech Systems, LLC testified that "Infowars, LLC is essentially a nonfunctional entity." Tab 5, 6/24/21 Dep. Tr. at 83:18-19. In the deposition of Free Speech System's corporate designee on February 14, 2022, in a separate action brought in Texas state court against several of the Jones defendants, the corporate designee described Infowars, LLC as "just a holder" that "doesn't do any business." Tab 6, 2/14/2022 Dep. Tr. at 391:10, 392:5-6. The corporate designee for Infowars Health, LLC testified during a deposition in this action that the company has never employed anyone, has no office space, has never had any contracts with another person or entity, has never conducted any business except with one other entity, and is solely owned and managed by Alex Jones. *See* Tab 7, 6/23/21 Dep. Tr. at 14:4-7, 15:17-18, 15:21-16:18, 17:9-22. The corporate designee for Free Speech Systems, LLC testified that "Infowars Health, LLC essentially acts as a pass-through entity." Tab 5, 6/24/21 Dep. Tr. at 82:1-2. The corporate designee for Prison Planet TV, LLC testified during a deposition in this action that the company has never employed anyone, has not had any purpose since September 2018, and is solely owned and managed by Alex Jones. *See* Tab 8, 6/23/21 Dep. Tr. at 14:17-21, 19:9-11, 22:1-12.

defendants' refusal to provide financial information (subsidiary ledgers) that the Jones defendants had been ordered to produce. Mr. Roe's claims in that affidavit were so implausible that the Connecticut Superior Court rejected his sworn statements as "not credible in light of the circumstances." *Id*. at 7:15-17.

This is the very same accountant who has been consulted in connection with the preparation of the bankruptcy petitions. Tab 3, Chapter 11 Petition Case No. 22-60020, Declaration of Proposed Restructuring Officer W. Marc Schwartz, Paragraph 7 ("I have met with Bob Roe, a CPA retained to delve into the books of account of various entities affiliated with the Debtors...."). For this and many other reasons, the bankruptcy petitions filed in Texas are just the next abuse of process by the Jones defendants.[8]

## III.    ARGUMENT

### A.  The Court Should Remand this Action to Connecticut State Court

The Court should remand this action to Connecticut Superior Court under its discretionary authority to order an equitable remand or permissively abstain from hearing this action.

The removal statute, 28 U.S.C. § 1452, permits remand to the state court "on any equitable ground." 28 U.S.C. § 1452(b); *In re Nat'l E. Corp.*, 391 B.R. 663, 669-70 (Bankr. D. Conn. 2008) (Krechevsky, J.). "Courts maintain wide discretion to make an equitable remand finding and 'equitable remand may be raised *sua sponte* by a court notwithstanding the absence of a motion to remand by any party.'" *Breakell v. 3M Co.*, 2019 WL 3162490, at *4 (D. Conn. July 16, 2019) (Bolden, J.) (quoting *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 61 (S.D.N.Y.

---

[8] The need for remand is plain. This Court need not address the propriety of the bankruptcy petitions in order to determine that remand is necessary.

2011)). Additionally, the court may permissively abstain from hearing this action under 28 U.S.C. § 1334(c)(1), a decision that is left to the court's discretion. *See Nat'l E. Corp.*, 391 B.R. at 669.

Courts consider the following factors when determining whether to remand a case based on equitable considerations or their discretionary authority to abstain:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*E.g.*, *Breakell*, 2019 WL 3162490, at *4; *Nat'l E. Corp.*, 391 B.R. at 670.[9]

As in Judge Bolden's decision in *Breakell*, these factors and general considerations of equity, justice, efficiency, and comity weigh strongly in favor of remand. In *Breakell*, the plaintiff sued numerous defendants for products liability, fraud, and premises liability in Connecticut Superior Court. Two years into the proceedings, one defendant filed for chapter 11 bankruptcy. Five months before trial, two other defendants removed the action to the United States District Court for the District of Connecticut under 28 U.S.C. § 1334(b) and 28 U.S.C.§ 1452(b), claiming "related to" jurisdiction. The plaintiff filed a motion to remand the action to Connecticut Superior Court. Applying the seven factors above, Judge Bolden remanded the case to the Connecticut Superior Court.

### 1. Remand Will Result in More Efficient Bankruptcy Administration

Remand would not negatively affect the efficient administration of the bankruptcy estate. Indeed, remand would benefit the efficient administration of the bankruptcy estate. One

---

[9] Since courts address both equitable remand and permissive abstention through this multi-factor test, we analyze both bases for remand simultaneously, through analysis of these factors.

consideration here is whether the state law claims require the special expertise of the bankruptcy court. *See, e.g. In re 9281 Shore Rd. Owners Corp.*, 214 B.R. 676, 696 (Bankr. E.D.N.Y. 1997) ("[T]he state law claims presented by [this action] do not require any 'special expertise' of the Bankruptcy Court."). There are *no* bankruptcy issues to be decided in these removed actions; they are purely state law tort claims. In this situation, "the expertise of the State Court would certainly effect a more efficient estate administration since state court judges are very familiar with the [Connecticut] law" governing the tort and state statutory claims at issue. *See id.*

Moreover, this action was approaching its "final phase" when the Jones defendants removed it. *In re Montague Pipeline Techs. Corp.*, 209 B.R. 295, 300 (Bankr. E.D.N.Y. 1997). That final phase will be very time consuming, with a summary judgment by a non-Jones defendant to be adjudicated, pre-trial motion practice, and then a four to six week jury trial, which is to commence in August 2022. As noted in *In re Montague Pipeline Techs. Corp.*, it would be highly problematic for a busy bankruptcy court to disrupt its own docket by undertaking to adjudicate a complex state-law trial: "If this Court were to occupy itself with the remaining portion of an essentially state court action, it would actually impede the efficient administration of the bankruptcy estate as significant delay might result from this Court's full docket." *Id.* In sum, remand will best serve the purpose of bankruptcy efficiency.

## 2.   The Removed Actions Present Exclusively State Law Issues

The issues remaining in this case are exclusively state law issues, a factor strongly favoring remand. "All of the claims asserted in the complaint . . . are based on state-law tort [common law]," *Nat'l E. Corp.*, 391 B.R. at 670, and on state statutory law (CUTPA). The issues to be tried are state-law damages issues resulting from the Jones defendants' committing these torts and violating CUTPA. As in *Nat'l E. Corp.*, another case where remand was ordered, the

families' claims arose "solely under state law." *Id.* Also as in *Nat'l E. Corp.*, the sole basis for federal question jurisdiction is the filing of bankruptcy petitions. *See id.* ("The only basis for federal question jurisdiction is that the debtor, who was one of the guarantors of White Oak's note, subsequently filed a bankruptcy petition."). In short, the issues to be decided here are not closely tied to any substantive issues to be decided in the bankruptcy case, if the Texas bankruptcy court permits those petitions to proceed.

The Connecticut Superior Court is far better suited to decide these issues, both because of its familiarity with Connecticut law and because of its familiarity with this particular case. Trial readiness matters. *See Breakell*, 2019 WL 3162490, at *6 (because the Connecticut Superior Court "has deemed the case ready for trial, it is better able to apply and respond to issues of Connecticut law"); *see also Madar v. Johnson & Johnson*, 2019 WL 2723463, at *8 (N.D.N.Y. July 1, 2019) (Suddaby, C.J.) (giving weight to state court's involvement in the action for "more than sixteen months"). The Connecticut Superior Court judge presiding over this case has overseen dispositive motion practice, adjudicated discovery battles, confronted the Jones defendants' repeated abusive conduct and sanctioned them accordingly, set trial dates, and indicated her intent to move the case forward to trial. In short, due to the predominance of state law issues, remand is the far more prudent and reasonable determination.

### 3. The Factual Issues to Be Tried Are Extensive and Complex

The state law damages claims at issue involve complex factual questions and a lengthy evidentiary presentation. There are fifteen plaintiffs who will testify regarding the extreme emotional distress they suffered as a result of Alex Jones's claims that they were nothing more than "crisis actors" perpetrating a fraud on the American people. To give a further example of the complexity of the factual questions in issue, some of the evidentiary presentation will

concern the reach of Alex Jones's defamatory broadcasts across the worldwide web, both through his websites Infowars.com and bannedvideo.com, and through social media platforms he used to spread his lies, including Facebook, Youtube, and Twitter.  Accordingly, the complexity of the evidentiary presentation, all of which will be evaluated under Connecticut state law damages principles, again supports remand. *See Breakell*, 2019 WL 3162490, at *6 (presence of complex state law issues support remand).

### 4.  Principles of Comity Strongly Support Remand

This action has been proceeding in Connecticut Superior Court for nearly four years. It is a "mature pending litigation" in state court. *In re Granoff*, 242 B.R. 216, 220 (Bankr. D. Conn. 1999) (Dabrowski, J.). The claims here are brought under Connecticut common law and the Connecticut Unfair Trade Practices Act. In *In re Granoff*, Judge Dabrowski said the following about similar claims:

> Connecticut's Civil Larceny Statute and Unfair Trade Practices Act, as well as its common law of contract, conspiracy, fiduciary duty, and intentional tort, are … remedial legal schemes [that have] spawned an intricate, complex, and still-developing body of state law that is, by all rights, the primary province of state *fora.* Each alleged scheme represents a different area of developing jurisprudence outside this Court's primary area of expertise. Considerations of comity and respect for state law therefore dictate that this Court defer to the state courts of Connecticut for interpretations of its common law and state statutes.

*In re Granoff*, 242 B.R. 216, 220 (Bankr. D. Conn. 1999). As in *In re Granoff*, the explication of the state-law legal principles applicable here is the province of the Connecticut courts. Comity dictates deference to the Connecticut courts on these issues.

Comity also dictates that remand is preferable for an additional reason: this removal is a deliberate tactic taken to undermine the trial date set by the Connecticut Superior Court. If the Jones defendants can win even a delay of a few weeks with this removal, they will attempt to use

that delay to avoid the August 2nd commencement of jury selection, deliberately undercutting the Superior Court's scheduling order and its global exercise of authority over the case.

### 5. The Issues to Be Decided Are Remote from the Bankruptcy Case

For the reasons previously stated, this factor weighs strongly in favor of remand. This action began in state court nearly four years ago and "the removal action was made after the state court established a trial date and the parties had engaged in discovery." *Breakell*, 2019 WL 3162490, at *6 (noting that one court had found minimal relatedness when the state court proceeding had arisen two years before the bankruptcy proceeding).

### 6. The Plaintiffs' Right to a Jury Trial Strongly Favors Remand

This action has been scheduled for a jury trial in damages, a right protected by the Connecticut Constitution. Jury selection – for which the month of August has been set aside – is scheduled to begin on August 2, 2022.  The plaintiffs' claims against the shell company debtors are personal injury tort claims,[10] and the adjudication of such claims for purposes of distribution

---

[10] A very significant component of damages being sought here is the emotional harm suffered by the plaintiffs based on the defendants' tortious conduct. The phrase "personal injury tort claim" is not defined in the Bankruptcy Code and there is little guidance in the legislative history. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002).  Some courts have adopted a narrow approach limiting this phrase to claims for trauma or bodily injury and other courts have adopted a broad view that encompasses any claim arising out of an invasion of personal rights.  *See id*.  Judge Weil in *Ice Cream Liquidation* adopted the broader view with the caveat that if the claim has "earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the right to resolve the 'personal injury tort claim' issue by (among other things) a more searching analysis of the complaint." *Id*., 161.  In that case, Judge Weil held that claims of sexual discrimination were personal injury tort claims.  *Id*., 162.  Just a few years later, in the context of a pregnancy discrimination claims, Judge Krechevsky adopted Judge Weil's holding in *In re Erickson*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005). Courts applying a similar analysis to this question have held that tort claims of the nature alleged here concerning the infliction of personal emotional harm (outside of a harm to financial, business or property interests) falls within the scope of personal injury tort claims.  *See, e.g., In re Miller*, 589 B.R. 550, 563 (Bankr. S.D. Miss. 2018) ("intentional infliction of emotional distress and

in the bankruptcy cases is not a core proceeding and cannot be adjudicated by the Bankruptcy Court. *See* 28 U.S.C. §157(b)(2)(B) and (b)(5). "No bankruptcy court may hold a jury trial on a non-core matter: "The bankruptcy court is constitutionally prohibited from holding a jury trial in noncore matters." *Nat'l E. Corp.*, 391 B.R. at 670. Indeed, 28 U.S.C. § 157(e) provides that a bankruptcy court could only preside over a jury trial with the parties' consent and the plaintiffs do not consent.[11]

The basis to remand the case only becomes stronger as this Court's jurisdiction over the underlying claims diminishes. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 164 (Bankr. D. Conn. 2002 (in context of motion for abstention or lift stay to continue pre-bankruptcy litigation). Rather than maintain this action in this Court, whose jurisdiction is questionable at best, the Connecticut Superior Court has jurisdiction, is intimately knowledgeable of the case, and is primed to bring this litigation to conclusion through a trial in damages in just a matter of a few months. *See Nat'l E. Corp.*, 391 B.R. at 670 (observing that having to request withdrawal of reference to district court for jury trial would impose additional burden on parties).

---

alienation of affection claims clearly are personal injury tort claims"); *In re DiMare*, 462 B.R. 283, 309 (Bankr. D. Mass. 2011) ("infliction of emotional distress pled as an independent cause of action is a personal injury tort claim over which the bankruptcy court has no jurisdiction"); *In re Arnold*, 407 B.R. 849, 853 (Bankr. M.D.N.C. 2009) (applying *Ice Cream Liquidation* analysis and holding that "defamation claims constitute personal injury tort claims"); *In re Thomas*, 211 B.R. 838, 841-42 (Bankr. D. S.C. 1997) (holding under both broad and narrow view claim for intentional infliction of emotional distress was personal injury tort claim).

[11] Further, the plaintiffs' claims against the non-debtor Jones defendants -- Alex Jones and Free Speech Systems, LLC -- are at the very best not "core" proceedings in the bankruptcy of the shell company debtors. There is likely no bankruptcy court jurisdiction at all concerning these claims because they (i) do not arise under Title 11, (ii) do not arise in a shell company debtors' cases under Title 11, or (iii) are not even related to the shell company debtors' bankruptcy cases.

### 7.    **Prejudice to the Involuntarily Removed Families Weighs in Favor of Remand**

This factor weighs strongly in favor of remand.[12] As Judge Bolden reasoned in *Breakell*, the prejudice to an involuntary removed plaintiff "strongly favors remand" when the plaintiff has long been litigating the action in state court. *See* 2019 WL 3162490, at *7. The case is currently set for a trial to begin in August.  As stated in *Breakell*, "[r]emoval of the case to federal court now would be prejudicial to [the families], because 'the State Court can efficiently and expeditiously try [an] action which is based entirely on state law.'" *Id.*

### 8.    **Other Considerations of Equity, Justice, and Comity Favor Remand**

The seven factors above are "non-exclusive" and are "a guide to the required inquiry." *Nat'l E. Corp.*, 391 B.R. at 671. "[T]he wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of 'equit[y],' 'justice' and 'comity' involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances." *Id*. Additional considerations of equity, justice, and comity weigh heavily in favor or remand.

First, only three of the five Jones defendants have filed for bankruptcy. *See Granoff*, 242 B.R. at 220 (listing "the presence in the proceeding of nondebtor parties" as additional factor for determining whether to remand). According to the information the Jones defendants have produced in discovery, the shell company debtors – Infowars, LLC; Prison Planet TV, LLC; and Infowars Health, LLC – have no employees, no business purpose, and little-to-no assets. The fact that these essentially assetless shell companies have filed bankruptcy petitions while Alex Jones

---

[12] Although this factor is often referred to as "prejudice to the involuntarily removed defendants," *e.g.*, *Nat'l E. Corp.*, 391 B.R. at 670, it is more accurately analyzed as "prejudice to the party involuntarily removed from state court," *e.g.*, *Lalima v. Johnson & Johnson*, 2019 WL 2362362, at *8 (N.D.N.Y. May 24, 2019), because often it is the plaintiffs who are involuntarily removed. That is the case in this action. *See Breakell*, 2019 WL 3162490, at *7 (weighing prejudice to involuntarily removed plaintiff).

and Free Speech Systems have not, shows that the bankruptcy petitions to be an abuse of the

bankruptcy process meant to cause delay on the eve of trial and allow forum shopping after two

prior failed attempts to remove this action to federal court. Under these circumstances, equity

requires granting remand and allowing this action to proceed in state court.

Second, this action is a "non-core" proceeding. "'Arising under' and 'arising in' cases are

termed core bankruptcy proceedings, while 'related to' cases are termed non-core proceedings."

*Shiboleth v. Yerushalmi*, 412 B.R. 113, 116 (S.D.N.Y. 2009). "Core proceedings encompass both

claims predicated on a right created by title 11 and claims that have no existence outside

bankruptcy. In contrast, a proceeding is non-core if it involve[s] the adjudication of state-created

private rights . . . and the outcome of the proceeding could affect the estate being administered in

bankruptcy." *Id.* at 116-17 (quotation marks omitted). This action is predicated entirely on state-

law private rights under state tort and statutory law. The families' claims are neither "claims

predicated on a right created by title 11," nor "claims that have no existence outside bankruptcy."

And as discussed above, the claims are personal injury tort the liquidation of which is statutorily

non-core. *See* 28 U.S.C. §157(b)(2)(B); footnote 10, *supra*.  They existed for nearly four years

prior to the bankruptcy filings on April 18, 2022. Accordingly, this is a "non-core" proceeding, a

factor which weighs in favor of remand. *See Shiboleth*, 412 B.R. at 117 ("Because non-core

claims do not implicate the essence of federal bankruptcy power, district courts consider such

classification of a claim in deciding whether to grant an equitable remand.").

### B.  The Jones Defendants' Claim that Removal Is Permissible Based on Diversity Jurisdiction Must Be Rejected

The Jones defendants claim diversity jurisdiction as an additional ground for removal.

*See* BR DN 1, Notice of Removal, 2 ("Additionally, there the [sic] diversity jurisdiction under 28

U.S. Code § 1332."). That claim can be quickly rejected.

Chief Judge Hall has already determined that any removal based on diversity jurisdiction would be untimely. No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for Remand, at 13-17 (remanding to state court because Jones defendants had neither removed based on diversity jurisdiction within one-year deadline nor established exception to deadline). Even if the District Court could and would exercise diversity jurisdiction over this case – which it cannot and would not – that would not supply this Court with any jurisdictional basis to exercise authority over this case. *See, e.g., In re Fort Worth Osteopathic Hosp., Inc.*, 406 B.R. 741, 748 (Bankr. N.D. Tex. 2009) ("The bankruptcy court is not granted jurisdiction to consider matters as to which the authority of federal courts is grounded in diversity jurisdiction.").

### C.  The Court Should Award Fees and Costs Pursuant to 28 U.S.C. § 1447(c)

Far from being a legitimate procedural move, this removal is the latest episode in the Jones defendants' long history of "obfuscation and delay" and "bad faith litigation misconduct." *Lafferty v. Jones*, 336 Conn. 332, 376-77 (2020), *cert. denied*, 141 S. Ct. 2467 (2021).

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Bank of New York v. Consiglio*, 2017 WL 4948069, at *5 (D. Conn. Nov. 1, 2017) (Haight, J.) (awarding removal fees for removal attempted under § 1446(c)(1)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). However, "[s]uch an award may be made without a showing of bad faith or frivolity, and deciding whether to make the award requires consideration of the overall nature of the case, circumstances of the remand, and effect on the parties." *Consiglio*, 2017 WL

4948069 at *5 (citing *Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir. 1992)).

This removal is the latest episode in a long train of bad-faith litigation misconduct—a fact that this Court should consider when deciding whether to award costs and fees. The trial court found (and the Connecticut Supreme Court agreed) that "the discovery in this case has been marked with obfuscation and delay on the part of the [Jones] defendants," noting they had "disregarded discovery deadlines on multiple occasions, continue[d] to object to. . . discovery" already ordered, "and failed to produce that which is within their knowledge, possession, or power to obtain." *Lafferty*, 336 Conn. at 374 (internal quotation marks omitted). The Connecticut Supreme Court found that Jones' actions created "a whole picture of bad faith litigation misconduct." Id. at 377. Since the case returned to the trial court and regular discovery opened, the Jones defendants have continued their strategy of obstruction and delay. They ultimately were defaulted for their obstruction and repeated refusal to follow court orders. Now, on the eve of the close of fact discovery and with jury selection just months away, they seek to delay further by removing to this Court. They are expecting that it will take this Court at least a month to adjudicate the remand, and that they will then be able to seek a delay of the Connecticut Superior Court trial date. This Court should act to deter such abuses and award the families just costs and actual expenses, including attorney's fees, under 28 U.S.C. § 1447(c).

## IV.    CONCLUSION

For these reasons, the plaintiffs respectfully request that this Court enter an order (i) remanding the actions back to the Connecticut Superior Court under 28 U.S.C. § 1452(b), or alternatively abstaining from hearing this proceeding in favor of the Connecticut Superior Court under 28 U.S.C. § 1334(c)(1); (ii) awarding the plaintiffs the payment of just costs and actual

expenses, including attorney fees, in the prosecution of this motion under 28 U.S.C. § 1447(c);

and (iii) such further relief as justice requires.

Dated: Hartford, Connecticut
      April 21, 2022

By: /s/ *Eric Goldstein*
    Eric Goldstein (Fed. Bar No. ct27195)
    Jessica M. Signor (Fed. Bar No. ct30066)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06013
    Telephone: (860) 251-5059
    Facsimile: (860) 251-5218
    Email: egoldstein@goodwin.com
           jsignor@goodwin.com

*Counsel for the Plaintiffs*[13]

By: /s/ *Alinor C. Sterling*
    Alinor C. Sterling (Fed. Bar No. ct17207)
    Christopher M. Mattei (Fed. Bar No. ct27500)
    Koskoff, Koskoff & Bieder P.C.
    350 Fairfield Ave.
    Bridgeport, CT 06604
    Telephone: (203) 336-4421
    Facsimile: (203) 368-3244
    Email: asterling@koskoff.com
           cmattei@koskoff.com

*Counsel for the Plaintiffs*[14]

---

[13] Shipman & Goodwin LLP represents in connection with this proceeding Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

[14] Koskoff, Koskoff & Bieder represents the Individual Plaintiffs as well as Richard M. Coan, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022, a copy of foregoing Motion for Remand was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I further certify that on April 22, 2022, a copy of the foregoing Motion for Remand was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

/s/ *Eric Goldstein*
ERIC GOLDSTEIN

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

20

SG 11059123v.1